UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LONNIE R. BERRYMAN, JR.,
individually and as a representative of the
Class,
                    *Plaintiff*,
        v.                                              No. 3:21-cv-1651-VAB
AVANTUS, LLC,
                    *Defendant*.

## RULING AND ORDER ON MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ON MOTION FOR ATTORNEYS' FEES AND NAMED PLAINTIFF AWARD

Lonnie R. Berryman, Jr. ("Class Representative" or "Plaintiff"), on behalf of himself and all others similarly situated, has moved for Final Approval of the Settlement Agreement ("Final Approval Motion") with Xactus, LLC, as successor in interest to certain assets of Avantus, LLC, and Avantus, LLC. *See* Mot. for Final Approval of Class Action Settlement, ECF No. 73. Plaintiff has also moved for attorneys' fees and a named plaintiff service award. *See* Mot. for Attorneys' Fees and Named Pl. Service Award, ECF No. 69.

For all of the reasons discussed below, the Court finds that the Settlement is fair, reasonable, and adequate, **GRANTS** the motion for final approval of the class action settlement, and **GRANTS** the motion for attorneys' fees and named plaintiff award.

## I.        FACTUAL AND PROCEDURAL BACKGROUND

On December 13, 2021, Plaintiff filed his class action Complaint against Defendant Avantus, LLC ("Defendant"), alleging that Defendant had violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e(b), by failing to maintain reasonable procedures to assure maximum possible accuracy in the consumer reports it furnished. Compl., ECF No. 1. Specifically, Plaintiff

alleged that Defendant had furnished consumer reports to third parties that included deceased notations on the subjects of the reports, who were in fact alive. *Id.* Plaintiff alleged that Defendant engaged in this reporting despite receiving information from at least one other consumer reporting agency indicating that class members were in fact alive. *Id.*

On March 21, 2022, Defendant answered the Complaint. Answer, ECF No. 16. The parties then began the discovery process: the parties exchanged written requests and responses and produced and reviewed documents and data; Plaintiff took two depositions of Defendant's employees; Defendant deposed both Plaintiff and his wife; and both sides pursued third-party discovery, including from both Defendant's data vendor and from the third-party lender that had ordered Plaintiff's report. Hashmall Decl. ¶ 4, ECF No. 65-2. The parties also engaged in expert discovery, with both sides producing an expert report. *Id.*

On January 25, 2023, Plaintiff filed his Motion for Class Certification, Mot. to Certify Class, ECF No. 38, which was fully briefed, and on May 5, 2023, he filed a Motion to Strike Defendant's Declaration, Mot. to Strike, ECF No. 56, which was also fully briefed.

On September 26, 2023, the parties attended a mediation with Hon. Barry R. Poretz (Ret.). Although a settlement was not reached at the mediation, the parties continued their arms-length discussions through counsel and steadily made progress towards a resolution. Mem. in Supp. of Pl.'s Mot. for Preliminary Settlement Approval at 3, ECF No. 65-1; Hashmall Decl. ¶ 5, ECF No. 65-2. The parties were able to ultimately reach a settlement in principle, *see* Joint Status Report, ECF No. 64, and eventually a final Settlement Agreement, which this Court preliminarily approved. *See* Mot. for Settlement Approval, Preliminary, ECF No. 65; Order Granting Mot. for Preliminary Approval, ECF No. 67.

The parties' proposed settlement resolves, on a class-wide basis, Plaintiff's claim that Defendant failed to maintain reasonable procedures to ensure maximum possible accuracy related

2

to its reporting that consumers were deceased, when they were alive.

The Settlement Class, which this Court has preliminarily certified for settlement purposes, is defined as:

> All persons residing in the United States of America (including its territories and Puerto Rico) who: (1) were the subject of a bi-merge or tri-merge report using the legacy Avantus system and branding from December 13, 2019 through November 3, 2023; (2) that included at least one notation related to a deceased status in the score section of the report; and (3) where at least one of the underlying consumer reporting agencies returned a credit score.

Settlement Agreement ("SA") ¶ 2.17; Order Granting Mot. for Preliminary Approval ¶ 2, ECF No. 67.

The Class has 1,377 members. Declaration of Settlement Administrator ¶ 3, ECF No. 70 ("Admin. Decl."). Of these, 719 Class Members met the criteria for being eligible to receive settlement payments automatically ("Automatic Payment Category") and 658 Class Members were categorized as falling in the "Claim Filing Category." *Id*. Should this Court grant final approval, Defendant will pay $450,758 into a non-reversionary settlement fund. SA ¶ 2.21. Under the proposed settlement, every participating Class Member will receive an equal payment from the fund.

On January 17, 2024, the Court issued its order granting preliminary approval of the Settlement Agreement, Order Preliminarily Approving Class Action Settlement, ECF No. 67, addressing the threshold issue of jurisdiction, as well as matters related to the class. Under Fed. R. Civ. P. 23(b)(3), the Court preliminarily certified the case, for settlement purposes only, as a class action on behalf of the following Settlement Class:

> All persons residing in the United States of America (including its territories and Puerto Rico) who: (1) were the subject of a bi-merge or tri-merge report using the legacy Avantus system and branding from December 13, 2019 through November 3, 2023; (2) that included at least

> one notation related to a deceased status in the score section of the report; and (3) where at least one of the underlying consumer reporting agencies returned a credit score

The Court also preliminarily found that the Action and the Settlement Class satisfied the applicable prerequisites for class action treatment under Fed. R. Civ. P. 23. More specifically, the Court preliminarily found numerosity, commonality, typicality, and that the Plaintiff and Class Counsel could fairly and adequately represent the interests of the Settlement Class Members. The Court further preliminarily found that, as to this Settlement Class, class treatment of these claims will be efficient and manageable, thereby achieving an appreciable measure of judicial economy, and a class action is superior to other available methods for a fair and efficient adjudication of this controversy.

The Court also scheduled the Final Fairness Hearing for May 8, 2024, ECF No. 68, and stated that, at the hearing, the Court would determine whether the applicable prerequisites for class action treatment for settlement purposes under Fed. R. Civ. P. 23 had been satisfied; whether the proposed settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class Members and should be finally approved by the Court; whether the Final Approval Order, as provided under the Settlement Agreement, should be entered, dismissing the Action with prejudice, terminating the above-captioned proceedings, and releasing the Released Claims against the Released Parties; and any other issues deemed approved. Order Preliminarily Approving Class Action Settlement at 8, ECF No. 67

Consistent with the Court's Preliminary Approval Order, on February 7, 2024, Continental DataLogix, the Settlement Administrator, mailed and sent by e-mail Notice to the Settlement Class Members. Admin. Decl. ¶¶ 6, 7. Before distribution, the Administrator had reviewed the Class List from Defendant and updated mailing addresses and email address information through use of

standard databases and also de-duplicated the List. *Id.* ¶¶ 3, 5. Also on February 7, the Settlement

Website became operational, and posted the Long Form Notice, important dates, Frequently Asked

Questions, links to the Complaint, Settlement Agreement, Motion for Preliminary Approval,

Preliminary Approval Order; and, within twenty-four hours of its filing, the Motion for Attorneys'

Fees and Named Plaintiff Service Award*. Id.* ¶ 13. The Administrator also maintained a toll-free

telephone line where callers could speak with a live agent and obtain information about the

settlement. *Id.* ¶ 14.

For thirty days following the initial distribution of the Notice, if Notices were returned

undeliverable through the mail, the Administrator researched new addresses and sent new mailings

to any new addresses discovered. By April 11, 2024, the Administrator had sent new mailings to all

but 65 of the returned mail Notices, a mail Notice delivery rate of 95.3%. *Id.* ¶¶ 11–12.

On April 8, 2024, the deadline for Claim Filing Category Class Members to return a claim

form passed. By that date, 53 valid Claim Forms had been received, a claims rate of 8% for the

Claim Filing Category. *Id.* ¶ 15.

On April 8, 2024, the deadline for opt-outs and objections also passed, and no opt-outs or

objections had been received. *Id*. ¶¶ 17, 18.

Plaintiff has also filed for attorneys' fees in the amount of $267,242 to be paid to Class

Counsel separate from the Settlement Fund, and he has requested a Named Plaintiff Service Award

of $7,500 to be paid from the Settlement Fund. Mot. for Attorneys' Fees and Named Pl. Service

Award, ECF No. 69. Defendant does not oppose this relief sought. *Id.*

Of the Class more broadly, 56% will receive compensation. Should this Court grant the

requested service award for the Class Representative, and after payment of the Settlement

Administrator's expenses, Class Counsel estimates that per Class Member net payments will be

approximately $523 – slightly higher than the amount estimated at preliminary approval.

If any settlement payments remain uncashed by the negotiation deadline, the balance of the Settlement Fund will be donated to in equal amounts to the parties' agreed-upon *cy pres* recipients: Public Justice ("PJ") and Community Action Agency of Delaware County, Inc. ("CAADC"), two non-profits dedicated to advancing consumers' rights through various assistance and education programs.

In exchange for this monetary relief, Class Members are releasing all claims related to any notations or indicators that the consumer is deceased in reports prepared by Defendant. SA ¶ 4.4.1.

On May 8, 2024, consistent with the Court's Preliminary Approval Order, the Court held a Final Fairness Hearing. Min. Entry, ECF No. 74.

At that hearing, the parties confirmed that Class Notice had been sent out, in accordance with the Court's Preliminary Approval Order. The parties also confirmed that the parties had received no objections to the Settlement Agreement. As of May 8, 2024, the Court also received no objections to the Settlement Agreement, and no objectors appeared at the Final Fairness Hearing.

## II.       DISCUSSION

### A.       Class Certification

Courts may certify a class solely for settlement purposes.  *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (permitting class action settlements "reached by means of settlement classes certified after the settlement, with notice simultaneous with that of the settlement"); *re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004) ("The Second Circuit has acknowledged the propriety of certifying a class solely for settlement purposes."); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997). Regardless of whether a class is certified for settlement or litigation purposes, the class must "meet each of the four requirements in Rule 23(a) and at least one of the requirements in Rule 23(b)." *Global Crossing*, 225 F.R.D. at 451.  One difference between certifying a litigation class versus a settlement class,

however, is that when a court is faced "with a request for settlement-only class certification, [it] need not inquire whether the case, if tried, would present intractable management problems," though a court must otherwise scrutinize the requirements of Rule 23. *Amchem Prod.*, 521 U.S. at 620.

For the reasons that follow, the Court finds that it is appropriate to certify the class for settlement because the class meets the requirements of Rule 23.

### 1.    Rule 23(a)

Rule 23(a) requires that, for a class to be certified: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

#### a.    Numerosity

Rule 23(a)(1) requires that the class be "so numerous" that joinder is impractical. Fed. R. Civ. P. 23(a)(1). The Second Circuit has held that "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). The class in this case has 1,377 members. Admin. Decl. ¶ 3.

Accordingly, the Court finds that the numerosity requirement is met.

#### b.    Commonality

Rule 23(a)(2) requires that a class action involve "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Commonality does not require that all claims or facts among class members be completely identical, just that the claims "arise from a common nucleus of operative facts." *In re Marsh ERISA*

*Litig.*, 265 F.R.D. 128, 142 (S.D.N.Y. 2010); *Global Crossing*, 225 F.R.D. at 451 (explaining that commonality "does not require an identity of claims or facts among class members" but is satisfied "if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class").

Here, Plaintiff argues that "Defendant's failure to investigate inconsistencies in its reports is common to all class members, who were all reported as both dead and alive by Defendant. This common practice leads to common legal questions, including (1) did Defendant have reasonable procedures to ensure maximum possible accuracy of its reports, as required by 15 U.S.C. §81e(b); (2) was Defendant's violation willful as required to recover statutory damages, pursuant to 15 U.S.C. § 1681n(a), and (3) what is the proper measure of statutory and punitive damages." Mem. in Supp. of Mot. for Class Cert. at 2, ECF No. 40 ("Class Cert. Mem.").

Accordingly, the Court finds that these issues present common questions of law.

### c.  Typicality

Rule 23(a)(3) requires that the representative Plaintiff's claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality requires that a class representative has "the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000). The requirement is met if the (1) "claims of representative plaintiffs arise from same course of conduct that gives rise to claims of the other class members," (2) "where the claims are based on the same legal theory," and (3) "where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representative." *Id.* (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Here, Plaintiff argues that he is a typical member of those he seeks to represent because like

all class members, he was erroneously reported as deceased by Defendant and "[t]his fact pattern –

Defendant passing along deceased reporting, despite having contrary information in its possession,

is present for every single member of the Class." Class Cert. Mem. at 3.

Accordingly, the Court finds that Mr. Berryman's claims are typical of the class.

### d.    Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

interests of the class." Fed. R. Civ. P. 23(a)(4). When evaluating the adequacy of representation, the

Court must consider "(i) whether the class representatives' claims conflict with those of the class"

and "(ii) whether class counsel is qualified, experienced, and generally able to conduct the

litigation." *Global Crossing*, 225 F.R.D. at 453; *see also Drexel Burnham*, 960 F.2d at 291 ("First,

class counsel must be 'qualified, experienced and generally able' to conduct the litigation. Second,

the class members must not have interests that are 'antagonistic' to one another.") (citation

omitted).

As discussed above with regards to typicality under Rule 23(a), the named Plaintiff's

"claims and interests are aligned with those of the [c]lass" because all seek to prove Defendant's

liability "based on common facts and claims." *Marsh*, 265 F.R.D. at 143. Plaintiff argues that he

has also been actively involved in the litigation and is committed to achieving the best possible

result for the Class. Class Cert. Mem. at 3. His counsel is experienced in FCRA class actions. *Id.*

Indeed, class counsel does have considerable experience. The three lead attorneys each have

"a wealth of experience." Hashmall Decl. at 7. E. Michelle Drake, an executive shareholder at

Berger Montague PC in Minneapolis, Minnesota, has well over twenty years of total legal

experience, and specific experience in handling large class action settlements. *Id.* Joseph C.

Hashmall, senior counsel, at Berger Montague PC in Minneapolis, Minnesota, also brings

experience in class actions to the case, and Jeffrey Gentes of the Connecticut Fair Housing Center,

brings a range of different experiences to the case, most specifically with respect to housing matters. *Id.*

Accordingly, the Court finds that Mr. Berryman and his counsel adequately represent the class.

### 2.      Rule 23(b)(3)

Federal Rule of Civil Procedure 23(b)(3) requires that, before certifying an opt-out class, a court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "This predominance requirement 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 96–97 (2d Cir. 2018) (quoting *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016)). "The predominance requirement is satisfied if 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof,' and 'these particular issues are more substantial than the issues subject only to individualized proof.'" *Id.* at 97 (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)).

As to predominance, three common questions predominate here: "(1) whether Defendant's reporting of contradictory information about whether a consumer was alive or dead was a reasonable procedure to assure maximum possible accuracy; (2) whether Defendant's conduct was willful; and (3) the proper measure of statutory and punitive damages." Class Cert. Mem. at 23. These questions—and the common factual issues discussed above—dominate this litigation and do not require individualized inquiry. *See In re Frontier Commc'n Corp.*, No. 3:17-CV-01617-VAB, 2022 WL 4080324, at *8 (D. Conn. May 20, 2022) (finding that "common questions of law and fact predominate over any question affecting only individual members" because "core legal and factual question—whether an untrue

statement or omission was made and whether it was objectively material—predominates over any other question affecting individual members").

As to superiority, consumer fraud is one of the examples that courts give for appropriate class treatment. *See In re Mexico Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) ("Many opinions, of which *Amchem*[1] is one, give consumer fraud as an example of a claim for which class treatment is appropriate.") (internal citation omitted). As is true here, "there will rarely be extensive damages in an FCRA action," *Yohay v. City of Alexandria Emps. Credit Union, Inc.*, 827 F.2d 967, 974 (4th Cir. 1987), so the incentives for individual consumers to bring a case are insufficient.

Accordingly, the Court finds that common questions predominate and that a class action is the superior means in this case.

## 4.       The Adequacy of Class Notice

Rule 23(c)(2)(B) provides that "[f]or any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

In accordance with the Court's preliminary approval order and as described above, the parties have provided the class with ample and sufficient notice of the Settlement.  Absent Settlement Class members have been given an appropriate opportunity to voice objections.  The Court therefore finds that the notice provided to the class satisfies both due process and the requirements of Rule 23.

Accordingly, for all of the reasons discussed above and previously decided in the Court's

---

[1] *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Preliminary Approval Order, this action may be maintained as a class action on behalf of the

Settlement Class for settlement purposes.

The Settlement Class shall be defined as follows:

> All persons residing in the United States of America (including its territories and Puerto Rico) who: (1) were the subject of a bi-merge or tri-merge report using the legacy Avantus system and branding from December 13, 2019 through November 3, 2023; (2) that included at least one notation related to a deceased status in the score section of the report; and (3) where at least one of the underlying consumer reporting agencies returned a credit score.

### B.      The Review of the Settlement For Fairness, Reasonableness, and Adequacy

Having determined that this case may proceed as a class action with a specifically defined

class, the Court now turns to a review of the proposed Settlement. Rule 23(e) provides that class

actions may only be settled with the Court's approval. Fed. R. Civ. P. 23(e).  Courts have discretion

over whether to approve the class action settlement. *See Global Crossing*, 225 F.R.D. at 455 (citing

*In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1026 (2d Cir. 1992)).

Before granting approval, "the district court must determine that a class action settlement is fair,

adequate and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d

Cir. 2000).  In exercising its discretion to determine whether a class action settlement is fair, a court

"should give proper deference to the private consensual decision of the parties" and "keep in mind

the unique ability of class and defense counsel to assess the potential risks and rewards of litigation."

*Clark v. Ecolab, Inc.*, No. 04-CIV-4488 (PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009)

(internal quotation marks omitted).  Courts should be "mindful of the strong judicial policy in favor

of settlements, particularly in the class action context" as "[t]he compromise of complex litigation is

encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,

396 F.3d 96, 116–17 (2d Cir. 2005) (internal quotation marks omitted).

When deciding whether a class action settlement is fair, adequate, and reasonable, a court's "primary concern is with the substantive terms of the settlement," which involves a "need to compare the terms of the compromise with the likely rewards of litigation." *Weinberger*, 698 F.2d at 73-74. A court must also consider the settlement's procedural fairness by examining "the negotiating process by which the settlement was reached." *Id.* at 74. "So long as the integrity of the arm's length negotiation process is preserved, however, a strong initial presumption of fairness attaches to the proposed settlement." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

### 1. The Substantive Fairness of the Settlement

The Second Circuit has identified nine factors, discussed in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), that a court should consider in determining whether a class action settlement is substantively fair:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). For a settlement to be substantively fair, "not every factor must weigh in favor of settlement," rather, "the court should consider the totality of these factors in light of the particular circumstances." *Global Crossing*, 225 F.R.D. at 456 (internal quotation marks omitted).

After analyzing the *Grinnell* factors, and for the reasons laid out below, the Court finds that the proposed settlement is fair, adequate and reasonable.

### a.     Complexity, Expense, and Likely Duration of Litigation

The first *Grinnell* factor addresses "the complexity, expense and likely duration of the

litigation." *Grinnell*, 495 F.2d at 463.  "'Most class actions are inherently complex and settlement

avoids the costs, delays and multitude of other problems associated with them' and courts therefore

favor class action settlements." *Id.* (quoting *In re Holocaust Litig.*, 80 F. Supp. 2d 164, 174

(S.D.N.Y. 2000)). "Absent a settlement, [litigation] costs will only escalate as a result of discovery

proceedings, motion practice, trials, and likely appeals." *In re PaineWebber Ltd. P'ships Litig.*, 171

F.R.D. 104, 126 (S.D.N.Y.), *aff'd* 117 F.3d 721 (2d Cir. 1997) (*per curiam*).

Plaintiff argues—and Defendant does not dispute—that "[i]f the parties had not reached their

proposed settlement, this case would have proceeded through a ruling on Plaintiff's motion for class

certification, dispositive motions, and trial. Additionally, for both the class certification ruling and

the dispositive motions, appellate practice would have been likely." Mem. in Support of Pl.'s Mot.

for Final Settlement Approval at 6–7, ECF No. 73-1 ("Mem."). ("an expensive trial would still need

to take place . . . . Avoidance of this unnecessary expenditure of time and resources clearly benefits

all parties and the interests of justice more broadly.").

Accordingly, the Court finds that this factor weighs in favor of approval of the Settlement.

### b.     Class Reaction to the Settlement

The second *Grinnell* factor analyzes "the reaction of the class to the settlement." *Grinnell*,

495 F.2d at 463.  A lack of objection from any class members after members received notice of the

settlement "is an extremely strong indication" that the proposed Settlement is fair. *Marsh*, 265

F.R.D. at 139. "If only a small number of objections are received, that fact can be viewed as

indicative of the adequacy of the settlement." *In re Synchrony Fin. Sec. Litig.*, No. 3:18-CV-1818-

VAB, 2023 WL 4992933, at *7 (D. Conn. Aug. 4, 2023) (citing *Wal-Mart*, 396 F.3d at 118).

No Class Member has objected to the settlement or to any of its terms, nor have any requested an exclusion. Mem. at 8. Plaintiff argues that for those in the Claim Filing Category, eight percent (8%) have returned timely claim forms, which is a rate at the high end of the range that is typical in consumer settlements. *Id.*

Accordingly, the Court finds that the reactions are an indication of the proposed settlement's fairness given that absence of objections can be evidence of its fairness. *See PaineWebber*, 171 F.R.D. at 126 ("the absence of objections may itself be taken as evidencing the fairness of a settlement") (citation omitted).

### c.      Stage of the Proceedings

The third *Grinnell* factor analyzes "the stage of the proceedings and the amount of discovery completed." *Grinnell*, 495 F.2d at 463.  This factor explores the information that was available to the settling parties to assess whether Class Counsel "have weighed their position based on a full consideration of the possibilities facing them." *Global*, 225 F.R.D. at 458. "Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims." *Id.*; *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2001) ("Also, the district court properly recognized that, although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information.  Thus, the 'stage of proceedings' factor also weighed in favor of settlement approval.").  The Court finds that this factor also weighs in favor of approval.

Here, the parties did engage in extensive discovery, including substantial productions, data analysis, depositions, and expert reports. Mem. at 8. Additionally, the parties informally exchanged substantial information in connection with their mediation and had fully briefed class certification. *Id.*

Accordingly, the Court finds that this factor weighs in favor of approval. *See In re*

*Synchrony Fin. Sec. Litig*, 2023 WL 4992933, at \*8 ("Therefore, this discovery is sufficient to provide a clear view of the strengths and weaknesses of their cases and of the adequacy of the settlement." (internal quotation marks omitted) (citing *In re Sturm, Ruger, & Co., Inc. Secs. Litig.*, No. 3:09-CV-1293 (VLB), 2012 WL 3589610, at \*5 (D. Conn. Aug. 20, 2012))).

### d.   Risks of Establishing Liability

The fourth *Grinnell* factor analyzes "the risks of establishing liability." *Grinnell*, 495 F.2d at 463. Class Counsel believed that Plaintiff would eventually prevail, but Defendant has consistently denied that it committed any wrongful acts or violations of the law, or that is liable in any way to Plaintiff or the Settlement Class. Mem. at 9 ("To be sure, Plaintiff was prepared to take on the burdens of further litigation and present substantial arguments opposing Defendant's positions, but the risks he faced were significant.").

Accordingly, this factor therefore weighs in favor of approving the Settlement. *See also In re Synchrony Fin. Sec. Litig*., 2023 WL 4992933, at \*8 ("Regardless of the merits of the case, if it continued before this Court, '[l]itigation inherently involves risks.'" (citing *In re PaineWebber*, 171 F.R.D. at 126)).

### e.   Risks of Establishing Damages

The fifth *Grinnell* factor analyzes "the risks of establishing damages." *Grinnell*, 495 F.2d at 463. To recover on the claim for statutory damages, Plaintiff would have to prove a willful violation of the FCRA at trial, which is a high hurdle. *See Connecticut Fair Hous. Ctr v. CoreLogic Rental Prop. Sols., LLC*, No. 3:18-CV-705-VLB, 2023 WL 4669482, at \*24 (D. Conn. July 20, 2023) ("The conduct must violate 'an objective standard,' meaning an action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" (internal quotation marks omitted) (citing *SafeCo Ins. Co. of America v. Burr*, 551 U.S. 47, 68 (2007))). Even if Plaintiff had prevailed on the issue of liability at trial, litigating the damages

issue would also have carried considerable risk.

Accordingly, the Court finds that this factor also weighs in favor of approving the Settlement.

### f.       Risks of Maintaining Class Action through Trial

The sixth *Grinnell* factor analyzes "the risks of maintaining the class action through the trial." *Grinnell*, 495 F.2d at 463. This factor concerns the risk that the Court would have denied the named Plaintiff's motion for class certification, "thereby limiting or even precluding any possible recovery for the [c]lass." *Marsh*, 265 F.R.D. at 140. Even if Plaintiff had obtained class certification, the risk of decertification at a later stage would remain. *See Global Crossing*, 225 F.R.D. at 460.

Accordingly, this factor also weighs in favor of approving the Settlement.

### g.       Defendants' Ability to Withstand Greater Judgment

The seventh *Grinnell* factor analyzes "the ability of the defendants to withstand a greater judgment." *Grinnell*, 495 F.2d at 463. This factor "standing alone, does not suggest that the settlement is unfair," and where the "other *Grinnell* factors weigh heavily in favor of settlement," the Court may still approve of the settlement as being fair, reasonable, and adequate. *D'Amato*, 236 F.3d at 86. "[A] defendant is not required to empty its coffers before a settlement can be found adequate." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *9 (S.D.N.Y. Sept. 9, 2015) (internal citations omitted). Here, "Defendant is not a large corporation, but is a sizeable company. There are no concerns that it can fund the settlement, nor are there concerns that it could withstand a judgment." Mem. at 13. Thus, even if the Defendant here could afford to pay more than the Settlement Amount, this does not prevent the Court from approving this Settlement as fair and reasonable.

Accordingly, this factor weighs in favor of approving the Settlement.

     **h.**     **Reasonableness of Settlement Fund in Light of Best Possible**

             **Recovery and Attendant Risks of Litigation**

These final two *Grinnell* factors analyze "the range of reasonableness of the settlement

fund in light of the best possible recovery" and "the range of reasonableness of the settlement

fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at

463.  Courts often combine their analysis of these factors.  *See Fleisher*, 2015 WL 10847814, at

*10 (analyzing final two *Grinnell* factors together); *Global Crossing*, 225 F.R.D. at 460–61

(same).  In analyzing these factors, a court should "consider and weigh the nature of the claim,

the possible defenses, the situation of the parties, and the exercise of business judgment in

determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462.

Here, Plaintiff has recovered approximately $523 per participating Class Member;

including both participating and non-participating Class Members, the gross recovery is about

$290 per class member. Mem. at 11. The gross per person amount exceeds the amount

recovered in numerous similar FCRA settlements. *Id.* at 11–12 (citing *Pang v. Credit Plus, No.*

1:21-CV-00122, ECF No. 61 (D. Md. 2021) (recovering class members received roughly $430,

settlement was roughly $125 gross per class member); *Steinberg v. CoreLogic Credco, LLC*,

No. 3:22-CV-498, ECF No. 46 at 15, ECF No. 66 (S.D. Cal. 2024) (settlement was roughly

$212 gross per class member; claiming class members are expected to receive roughly $600);

*McAfee v. CIC Mortgage Credit, Inc.*, No. 3:22-CV-772, ECF No. 40 at 3, ECF No. 54 (E.D.

Va. 2023) (where settlement was roughly $104 gross per class member; claiming class

members are expected to receive roughly $525); *Roe v. IntelliCorp Records, Inc.*, No. 12-2288,

ECF No. 139 (N.D. Ohio June 5, 2014) (settlement of alleged inaccurate reporting, and other

FCRA claims, providing for $50-$270 net per class member); *Ryals v. HireRight Sols. Inc.*, No.

09-625, ECF No. 127 (E.D. Va. Dec. 22, 2011) ($15-$200 gross per class member recovery);

*Ori v. Fifth Third Bank, Fiserv, Inc.*, No. 08-432, ECF No. 217 (E.D. Wis. Jan. 10, 2012) (each

claimant receiving approximately $55*); Speers v. Pre-Employ.com, Inc.*, No. 13-1849, ECF No.

83 (D. Or. Feb. 10, 2016) (approximately $153 net per class member); *Villaflor v. Equifax Info.*

*Servc. LLC*, No. 09-329, ECF No. 177 (N.D. Cal. May 3, 2011) (providing credit monitoring

for class members with a retail value of $155)).[2]

Accordingly, the Court finds that the eighth and ninth *Grinnell* factors weigh in favor of

approval.

### 2.      The Procedural Fairness of the Settlement

In addition to ensuring the substantive fairness of a settlement by analyzing the *Grinnell*

factors, the Court must also ensure that the settlement is procedurally fair and "not the product of

collusion." *Global Crossing*, 225 F.R.D. at 461.  "[C]ourts have demanded that the compromise

be the result of arm's-length negotiations and that plaintiffs' counsel have possessed the

experience and ability, and have engaged in the discovery, necessary to effective representation of

the class's interests." *Weinberger*, 698 F.2d at 73–74.  When a settlement was negotiated by such

"experienced, fully-informed counsel after extensive arm's-length negotiations," the resulting

settlement "is entitled to an initial presumption of fairness and adequacy." *Fleisher*, 2015 WL

10847814, at *5.

Accordingly, the Court finds that this Settlement is procedurally fair.

### C.      The Request for Attorneys' Fees

Plaintiff requests that the Court award Class Counsel $267,242 in attorneys' fees and

award him a named plaintiff service award of $7,500 to be paid from the settlement fund. Mot.

for Attorneys' Fees and Named Pl. Service Award, ECF No. 69; Mem. in Supp. of Pl.'s Mot. for

---

[2] Plaintiff's memorandum appears to cite directly to the respective dockets of each of these cases. Mem. at 11–12.

Attorneys' Fees and Name Pl. Service Award, ECF No. 69-1 ("Fee Mem.").

In addition, Class Counsel has expended $14,661.36 in out-of-pocket costs that have not been reimbursed, and for which they are not requesting reimbursements. Hashmall Dec. in Supp. of Mot. for Attorneys' Fees at 2, ECF No. 69-2 ("Hashmall Fees Dec.").

The Court has discretion in determining what attorneys' fees are reasonable in a class action settlement. *See In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 347 (S.D.N.Y. 2014) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)). When evaluating whether a proposed attorneys' fees award in the class action settlement context is reasonable, the Court considers the following *Goldberger* factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (internal quotation marks omitted).

In cases such as this one, where the parties agree to a fee that is to be paid separately by the Defendants rather than one that comes from, and therefore reduces, the Settlement Fund available to the class, "the Court's fiduciary role in overseeing the award is greatly reduced" because "the danger of conflicts of interest between attorneys and class members is diminished." *Jermyn v. Best Buy Stores, L.P.*, No. 08-CIV-214 CM, 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012). The Court must, however, still "assess the reasonableness of the fee award" where the fee does not come from the common fund, because "a defendant is interested only in disposing of the total claim asserted against it, and not in the allocation between the class payment and the attorneys' fees." *Id.* (internal quotation marks omitted). The fact that the parties negotiated a fee that would not reduce the class's recovery only "after settlement terms had been decided," does, nonetheless, support a finding of the award's reasonableness. *Blessing v. Sirius XM Radio Inc.*,

507 F. App'x 1, 4 (2d Cir. 2012).

Furthermore, the decision of an appropriate fee award in this case was made by the independent, third-party mediator, which also weighs in favor of the award's reasonableness. *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-CIV-5173 (RPP), 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008) (noting that parties' negotiation of fee award to be paid directly by Defendants through arms-length negotiation with supervision of independent mediator were all factors weighing in favor of approving the fee award); *McBean v. City of N.Y.*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006) ("[T]he fact that the award was the product of arm's-length negotiations under the supervision of Judge Katz weighs strongly in favor of approval.").

Courts in the Second Circuit use one of two different methods to analyze attorney's fees. *Goldberger*, 209 F.3d at 50 ("In sum, we hold that both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases."); *see also McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) ("[I]t remains the law in this Circuit that courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method.") (internal quotation marks omitted). The first method, the "lodestar method," begins with the multiplication of "the reasonable hours billed by a reasonable hourly rate." *Colgate-Palmolive*, 36 F. Supp. 3d at 347–48. The district court may then "adjust the multiplier based on other factors such as the risk of the litigation or the performance of the attorneys." *Id.* at 348. The second method, the "percentage of the fund" method, sets a fee that is "a reasonable percentage of the total value of the settlement fund created for the class." *Id.*

Many courts in the Second Circuit favor the percentage of fund method for awarding attorneys' fees in class action settlements. *See Wal-Mart*, 396 F.3d at 121 ("The trend in this Circuit is toward the percentage method.") Courts find that, in typical class action cases, the

percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Id.* This potentially contrasts with the lodestar method, which may "create[] an unanticipated disincentive to early settlements, tempt[] lawyers to run up their hours, and compel[] district courts to engage in a gimlet-eyed review of line-item fee audits." *Id.* The Second Circuit has also noted, however, that both methods have advantages and disadvantages. *See McDaniel*, 595 F.3d at 419 ("[N]either the lodestar nor the percentage-of-fund approach to awarding attorneys' fees in common fund cases is without problems.").

The Court thus will analyze the proposed attorney's fee award using the *Goldberger* factors, and then also review the proposed fee award under the lodestar method.

### 1.   Time and Labor Expended by Counsel

The first *Goldberger* factor considers the "time and labor expended by counsel." *Goldberger*, 209 F.3d at 50. The Court finds that Class Counsel has expended considerable time and effort in resolving this case in a way that is favorable to the class without the need for extensive discovery and additional time-consuming litigation. Thus, this factor weighs in favor of the proposed fee award.

In total, Class Counsel has expended 400.6 hours on this matter, resulting in $303,643.50 in lodestar calculated at Class Counsel's normal hourly rates. Hashmall Fees Dec. at 2. Those hours represent considerable effort devoted to investigating the claims at issue, drafting the complaint, analyzing the Defendants 'motion to dismiss, reviewing relevant documents, retaining and working with an actuarial expert to analyze liability and damages, and negotiating the Settlement Agreement. *Id.* Furthermore, Class Counsel will continue to expend time and resources overseeing the administration of the settlement even after this fee award is approved. *Id.* The Court recognizes that "Class Counsel's fee award will not only compensate them for time and

effort already expended, but for time that they will be required to spend administering the settlement going forward." *deMunecas v. Bold Food, LLC*, No. 09-CIV-00440 (DAB), 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010).

Accordingly, in light of Class Counsel's time and efforts, which have resulted in an extremely efficient and favorable resolution of this case, the proposed fee award is fair and reasonable under this *Goldeberger* factor.

### 2.    Magnitude and Complexities of the Litigation

The second *Goldberger* factor considers "the magnitude and complexities of the litigation." *Goldberger*, 209 F.3d at 50.  As discussed above with regards to the *Grinnell* factors, this case was complex and risky to litigate.

Accordingly, under this *Goldberger* factor, the magnitude and complexity of the litigation show that the proposed fee award, which is less than the total fees actually incurred, is fair and reasonable.

### 3.    Risk of the Litigation

The third *Goldberger* factor considers "the risk of the litigation."  *Goldberger*, 209 F.3d at 50.  The Second Circuit recognizes that the risk of success is "perhaps the foremost factor" to be considered in determining a fee award in class actions.  *Id.* at 54.  After all, "despite the most vigorous and competent of efforts, success is never guaranteed." *Grinnell*, 495 F.2d at 471.  As discussed above with regards to the *Grinnell* factors and the magnitude and complexities of the litigation, the risks associated with litigating this case were particularly profound because the key legal question in this case is one of first impression in the Second Circuit.

Accordingly, under this *Goldberger* factor, in light of the risks of litigation in this case, the proposed fee award is fair and reasonable.

### 4.      Quality of Representation

The fourth *Goldberger* factor considers "the quality of representation" by Class Counsel. *Goldberger*, 209 F.3d at 50.  For the reasons discussed below, the quality of representation in this case show that the proposed fee award is fair and reasonable.

The Second Circuit has held that "the quality of representation is best measured by results, and that such results may be calculated by comparing the extent of possible recovery with the amount of actual verdict or settlement." *Goldberger*, 209 F.3d at 55 (internal quotation marks omitted).

Accordingly, under this *Goldberger* factor, the proposed fee award is reasonable, given the quality of representation and the discount at which they litigated.

### 5.      Requested Fee in Relation to Settlement

The fifth *Goldberger* factor considers "the requested fee in relation to the settlement." *Goldberger*, 209 F.3d at 50.  The fee award in this case will be paid by Defendants, and will not come out of the Settlement Fund, which suggests reasonableness with respect to the award. Nevertheless, a comparison of the requested attorneys' fee award and the Settlement Fund may still be instructive in assessing the reasonableness of the award.  *See McBean*, 233 F.R.D. at 392 ("[W]hile this is not a common fund case, the fact that the award here is lower than many awards actually taken from a common fund, at the expense of absent class members, is further evidence of its reasonableness."). In this case, based on this record and the Court's review of it, the requested fee is reasonable.

Accordingly, this *Goldberger* factor favors finding the requested fee to be reasonable.

### 6.     Public Policy Considerations

The sixth *Goldberger* factor analyzes "public policy considerations." *Goldberger*, 209 F.3d at 50.

Accordingly, as in *Marsh*, public policy considerations therefore justify the proposed fee award, as Class Counsel "should receive a reasonable attorney's fee for their efforts," to ensure that Plan participants have a remedy. *Id.* ("courts 'have recognized the importance that fair and reasonable fee awards have in encouraging private attorneys to prosecute class actions on a contingent basis . . . on behalf of those who otherwise could not afford to prosecute'" (quoting *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002))).

### 7.     Lodestar Cross-Check

Courts often compare a proposed fee award in a class action to the lodestar, or a "lodestar cross-check" as a final "sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *Colgate-Palmolive*, 36 F. Supp. 3d at 353. Here, the amount requested as attorneys' fees is less than the fees actually incurred by Class Counsel. In all, Class Counsel incurred, inclusive of lodestar and out-of-pocket expenses, $318,304.86 on this litigation and settlement. The amount requested, $267,242, is thus less than the incurred amount. And this is even before the future work of the settlement is considered, including the forthcoming preparation for final approval briefing and hearing. More specifically, based on this record, and the Court's review of it, the hours expended on the case, and the requested hourly rates, are within an acceptable range.

Accordingly, having compared the proposed attorneys' fee award under the lodestar method, the requested award is considered reasonable.

C.      The Request for an Incentive Award

Incentive awards to representative plaintiffs in class action cases "compensate the named

plaintiff for any personal risk incurred by the individual or any additional effort expended by the

individual for the benefit of the lawsuit." *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118,

124 (S.D.N.Y. 2001).  Such awards are designed to reimburse representative plaintiffs, who "take

on a variety of risks and tasks when they commence representative actions, such as complying

with discovery requests and often must appear as witnesses in the action." *Marsh*, 265 F.R.D. at

150.

Courts in this Circuit frequently approve incentive awards of various amounts in many

types of class actions, with determinations of whether the proposed amounts are appropriate being

based, somewhat, on assessments of the burdens a representative plaintiff took on by participating

in the case.  *See Fleisher*, 2015 WL 10847814,  at *24 (awarding, in insurance class action, an

incentive award of $25,000 to named plaintiff who spent "at least 88 hours actively fulfilling his

obligations as a Class representative" including by attending all-day deposition and also

approving $5,000 incentive awards to other named plaintiffs); *Dornberger*, 203 F.R.D. at 124–25

(approving, in civil RICO class action, an award of $10,000, for representative plaintiff who

provided assistance to class counsel in various ways for six years including by "traveling to New

York for her deposition at her own cost," and awards of $1,500 each for eight subclass

representative); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 188 (S.D.N.Y. 1997) (affirming

Special Master's finding, in employment discrimination class action, that awards ranging from

$2,500 to $85,000 were appropriate for various representative plaintiffs depending on degree of

participation and/or post-litigation burden or risk, including risk of retaliation by employer).

Here, Plaintiff requests an incentive award of $7,500, an amount well within the range of

case contribution awards courts in this circuit have granted, and for having engaged in activities

consistent with the various activities of other named plaintiffs who have received incentive awards. *Compare Colgate-Palmolive*, 36 F. Supp. 3d at 354 (approving incentive award of $5,000 for each of six named plaintiffs who reviewed draft pleadings and motions, searched for and produced relevant documents, reviewed filings, and communicated regularly with class counsel); *Marsh*, 265 F.R.D. at 150–51 (approving incentive award of $15,000 for each of three named plaintiffs who initiated the action, remained in frequent contact with class counsel, responded to document requests and interrogatories, reviewed and approved pleadings, assisted with discovery, were involved in settlement discussions, and prepared for, traveled to, and sat for full-day depositions); *with* Memo in Support of Plaintiff's Motion for Attorney's Fees and Named Plaintiff Service Award at 4 ("Plaintiff has (1) reviewed and approved the complaint; (2) provided documents and information, including documents containing sensitive personal identifying and financial information. (3) prepared and appeared for his deposition, as did his wife, (4) consulted with Counsel during settlement negotiations, and (5) reviewed and approved the Settlement Agreement.") (citation omitted).

Accordingly, the Court finds that this incentive award is reasonable, and should be awarded.

## III.   CONCLUSION

For all of the foregoing reasons, the Court (1) **GRANTS** the motion for final approval of the Settlement, (2) certifies the Class for Settlement purposes, (3) determines that the notice provided to the class was appropriate and sufficient, (4) **GRANTS** the motion to award $267,242 in attorney fees to Class Counsel, (5) **GRANTS** the motion to award Mr. Berryman $7,500 as a named plaintiff service award in recognition of his efforts on behalf of the Class.

The Court therefore **FINDS, CONCLUDES, AND ORDERS as follows:**

(1) The Settlement Agreement is fair, adequate, and reasonable;

(2) The terms of the Settlement Agreement are fair, reasonable, and adequate giving the

following factors, among other things:

    a.   All claims within the above-captioned proceeding are complex and time-consuming, and would have continued to be so through summary judgment and/or trial if it had not settled;

    b.   Class Counsel had a well-informed appreciation of the strengths and weaknesses of the Action while negotiating the Settlement Agreement;

    c.   The relief provided for by the Settlement Agreement is well within the range of reasonableness in light of the best possible recovery and the risks the parties would have faced if the case had continued to trial;

    d.   The Settlement Agreement was the result of arms' length, good faith negotiations and exchange of information by experienced counsel; and

    e.   The reaction of the Settlement Class has been positive without any objections or opt-outs;

(3) All Claims are hereby dismissed with prejudice and terminated. Except as otherwise provided herein or in the Settlement Agreement, such dismissal and termination shall occur without costs to Plaintiff or Defendant. Plaintiff and all Settlement Class Members hereby fully release all Released Parties for all Released Claims, and are hereby enjoined from instituting, maintaining, or prosecuting, either directly or indirectly, any lawsuit or claim that asserts any Released Claims;

(4) Having reviewed the declarations, exhibits, and memoranda submitted in support of the requests for attorneys' fees and costs, the Court approves an award of attorneys' fee and costs to Class Counsel in the amount of $267,242. The Court finds this amount to be reasonable and appropriate under all circumstances presented;

(5) The Settlement Administrator is directed to distribute the balance of the Settlement

Fund to participating Class Members as expressly set forth in the Settlement
Agreement. Should funds remain for *cy pres* distribution, the parties' selected
organizations, Public Justice and Community Action Agency of Delaware County,
Inc., are approved to receive such residual funds.

(6)  The Court expressly retains exclusive and continuing jurisdiction, without affecting the
finality of this Order, over the Settlement Agreement, including all matters relating to
the implementation and enforcement of the terms of the Settlement Agreement. It is in
the best interests of the Parties and the Settlement Class Members, and consistent with
principles of judicial economy, that any dispute between any Settlement Class Member
(including any dispute as to whether any person is a Settlement Class Member) and any
Released Party which, in any way, relates to the applicability or scope of the
Settlement Agreement or the Final Judgment and Order, should be presented
exclusively to this Court for resolution;

(7)  Nothing herein, including the Court's retention of jurisdiction over the Settlement
Agreement, shall be a basis for any party, including any class member, to assert a court
has personal jurisdiction over any other party in any matter other than a matter seeking
to enforce the terms of the Settlement Agreement;

(8)  Neither this Final Judgment and Order, nor the Settlement Agreement, shall be
construed or used as an admission or concession by or against the Defendant or any of
the Released Parties of any fault, omission, liability, or wrongdoing, or the validity of
any of the Settlement Released Claims. This Final Judgment and Order is not a finding
of the validity or invalidity of any claims in this lawsuit or a determination of any
wrongdoing by Defendant or any of the Released Parties. The final approval of the
Settlement Agreement does not constitute any opinion, position, or determination of

this Court, one way or the other, as to the merits of the claims and defenses of the Named Plaintiff, the Settlement Class Members, or Defendant;

(9) If the Effective Date, as defined in the Settlement Agreement does not occur for any reason whatsoever, this Final Approval Order shall be deemed vacated and shall have no force or effect whatsoever;

(10)   The parties are hereby directed to carry out their obligations under the Settlement Agreement; and

(11)   This Final Order shall be, and hereby is, entered as a final and appealable order.

The Complaint is hereby **DISMISSED** with prejudice.

The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

**SO ORDERED** at New Haven, Connecticut, this 10th day of May, 2024.


  /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge